CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 18, 2026
LAURA A. AUSTIN, CLERK
BY: /s/L. Ayers
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISON**

**TRACY LEE MCELROY,**

**Plaintiff,**

**v.**

**VIRGINIA TECH BOARD OF VISITORS | VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY,**

**Defendant.**

**CASE NO.:** 7:26-cv-00660

**JURY TRIAL DEMAND**

## COMPLAINT

COMES NOW, Plaintiff Tracy Lee McElroy by counsel, and states as his Complaint against Defendant Virginia Tech Board of Visitors | Virginia Polytechnic Institute and State University, the following:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as a question of federal law, 28 U.S.C. § 1331, namely the Rehabilitation Act of 1973, as amended, codified at 29 U.S.C. §§ 701, *et seq*. ("Rehabilitation Act" or "Act").

2. Pursuant to 42 U.S.C. § 2000d-7(a)(1), "[a] State shall not be immune under the Eleventh Amendment... from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . ."

3. Defendant accepts financial assistance from the U.S. Government such that they are an employer and actionable defendant pursuant to the Rehabilitation Act.

4. Venue is proper in this Court, as the acts and/or omissions substantially occurred

within the Court's geographic area. *See* 28 U.S.C. § 1391(b)(2).

## II. THE FACTS

### A. Introduction

5. Plaintiff Tracy Lee McElroy was employed by The Virginia Tech National Security Institute ("VTNSI") as Project Manager on or about August of 2019. He was promoted to Operations Manager of the VTNSI on or about February 2020 and eventually promoted to Associate Director of Operations.

6. The VTNSI is a research institute at Virginia Tech that conducts national security research and engages students in that research, providing them pathways to obtain security clearances and pursue careers in the national security sector.

7. At all times relevant to this Complaint, Mr. McElroy's direct supervisors were Eric Paterson ("Mr. Paterson"), the Executive Director of VTNSI and Emilee Hillman ("Ms. Hillman"), former Director of Finance and Administration. Ms. Hillman is the current chief of Staff.

8. Mr. McElroy performed the essential functions of his position as Associate Director and was a qualified, capable, and contributing member of the VTNSI team throughout his employment.

9. Mr. McElroy has been diagnosed with Primary Progressive Multiple Sclerosis ("PPMS"), a chronic, progressive neurological condition that substantially limits one or more major life activities, including but not limited to neurological function, mobility, and the operation of major bodily systems.

10. Mr. McElroy's PPMS is documented with Virginia Tech's ADA office. Defendant

was at all relevant times fully aware of Mr. McElroy's disability.

11. As his condition progressed, Mr. McElroy disclosed the progression of his PPMS to Virginia Tech and VTNSI and sought reasonable support and accommodations, including disability-related leave, to allow him to continue performing his duties.

12. Beginning in 2023, Mr. McElroy sought to address the discriminatory and retaliatory conduct through Virginia Tech's internal processes. He raised his concerns with his direct supervisor, Eric Paterson. When no adequate response was forthcoming, he escalated to Human Resources. Receiving no effective resolution, he brought his concerns to the Office of Research and Innovation. Finally, Mr. McElroy reported the ongoing conduct to Virginia Tech's Office of Civil Rights and Office of Preventative Education.

13. Ultimately, Virginia Tech terminated Plaintiff's employment in retaliation for his protected act under the Rehabilitation Act.

**B. Red Flags in the Accommodation Process**

14. Virginia Tech initially approved disability-related leave as an accommodation for Mr. McElroy. However, this was not without red flags for Mr. McElroy.

15. In August and September of 2024, Mr. McElroy engaged in discussions regarding accommodations related to his disability with Human Resources.

16. On or about September 6, 2024, Human Resources Manager Sue Kass allegedly responded to Plaintiff's statement that he was experiencing difficulty walking due to his PPMS by stating that "the walk will do you some good," a comment Plaintiff reasonably perceived as dismissive of his disability and mobility limitations.

**C. Retaliation**

17. Following Mr. McElroy's disclosure of the progression of his PPMS and his requests for support and accommodations, VTNSI —acting through Executive Director Eric Paterson, Human Resources, and former Director of Finance and Administration Emilee Hillman—commenced a sustained and systematic effort to diminish Mr. McElroy's role within the VTNSI.

18. This effort included, but was not limited to: (a) reducing Mr. McElroy's staff; (b) limiting his responsibilities and scope of authority; and (c) obstructing his opportunities for professional growth within the organization. These actions were designed to minimize Mr. McElroy's impact and presence at Virginia Tech.

19. When these efforts did not result in Mr. McElroy's departure, VTNSI introduced administrative mechanisms intended to create a false record of poor performance as a purported justification for his removal.

20. After Mr. McElroy began exercising his disability accommodation and leave rights, VTNSI initiated a pattern of adverse employment actions in the form of pretextual and unwarranted performance criticisms.

21. The performance-related adverse actions directed at Mr. McElroy were not applied to similarly situated employees without disabilities and were not grounded in legitimate performance concerns. They were designed and used as pretext to justify Mr. McElroy's termination or constructive discharge on account of his disability.

22. Beginning in approximately November of 2024 and continuing through October of 2025, Defendants removed personnel and support resources previously available to

Plaintiff while increasing expectations that Plaintiff personally perform physically demanding operational tasks despite knowledge of his mobility limitations

23. In approximately January through April 2025, Defendants revised Plaintiff's Position Description and shifted the position from a strategic leadership role toward a more tactical and operational role requiring increased on-site physical activity.

24. Defendants made these changes despite knowledge that Plaintiff's disability affected his ability to engage in the increased physical activities emphasized in the revised Position Description.

25. Defendant's actions effectively transformed Plaintiff's role from one emphasizing strategic leadership and management to one requiring significantly greater physical presence and mobility.

26. During July and August of 2025, Plaintiff sought continued student-worker assistance and operational support. Defendant denied or reduced such assistance despite knowing Plaintiff relied upon those resources to offset physical limitations associated with PPMS.

27. Although Defendant nominally approved accommodations, Defendant undermined those accommodations by reducing support resources, increasing physical demands, altering Plaintiff's Position Description, and creating expectations that Plaintiff report to campus and perform duties beyond the scope contemplated by his accommodations.

28. Defendant denied Plaintiff meaningful accommodation requests and failed to engage in good-faith efforts to provide reasonable accommodations that would have

enabled Plaintiff to perform the essential functions of his position without unnecessary physical strain.

29. Defendant further minimized Mr. McElroy's disability-related concerns by characterizing his requests for assistance and concerns regarding workload, mobility, and accommodations as performance issues rather than legitimate disability-related concerns.

**D. Protected Acts**

30. In response to the discriminatory and retaliatory conduct he was experiencing, Mr. McElroy sought the assistance of the Virginia Tech Ombuds Office in an effort to pursue a collaborative and respectful resolution of the workplace conflict in May of 2025.

31. Rather than welcoming this good-faith effort, Director of Finance and Administration Emilee Hillman rebuked Mr. McElroy's use of the Ombuds Office and expressed clear discontent with Mr. McElroy's decision to involve that office.

32. Following Mr. McElroy's use of the Ombuds Office, he experienced a series of increasingly coordinated retaliatory actions, including attempts to restructure the VTNSI in a manner specifically designed to eliminate Mr. McElroy's position.

33. At each stage, Mr. McElroy exhausted the available internal remedies without obtaining meaningful relief. Virginia Tech's internal processes failed to stop, remedy, or adequately address the ongoing discrimination and retaliation.

34. Mr. McElroy reported that he was discriminated against due to his disability on August 6, September 22, November 10, and December 10, 2025. Mr. McElroy reported to the lead investigator appointed by Virginia Tech.

35. On or about November 11, 2025, Defendant issued a Minor Sanction, without any basis, to Mr. McElroy. This was false and retaliatory discipline. This sanction prevented Mr. McElory from transferring to new positions for which he was otherwise qualified. This false discipline caused economic harm to Mr. McElroy.

36. Following months of increased scrutiny, counseling memoranda, altered job expectations, diminished resources, and disability-related conflicts, Defendant issued a Non-Reappointment Notice on or about October 14, 2025, culminating in Plaintiff's separation from employment effective October 13, 2026.

37. Most recently, Mr. McElroy's approved leave period ran from November 15, 2024 through November 14, 2025, representing a total of 480 available leave days. During this period, Mr. McElroy utilized only six (6) of those days, demonstrating his commitment to his position and his efforts to continue working despite his condition.

38. Despite Mr. McElroy's minimal use of his approved leave—only six days out of 480 available— VTNSI personnel, including Executive Director Eric Paterson, expressed concern about Mr. McElroy's disability. Based on the totality of the circumstances, Mr. McElroy reasonably believes that Virginia Tech sought to remove him from his position because of his disability and his exercise of accommodation rights.

39. Defendants' actions constituted discrimination on the basis of disability, failure to reasonably accommodate disability, and exclusion from the benefits and privileges of employment in violation of Section 504 of the Rehabilitation Act.

40. Virginia Tech's discriminatory and retaliatory conduct has caused Mr. McElroy significant and continuing harm, including lost wages, lost employment opportunities,

damage to his professional reputation, and severe emotional and psychological distress.

41. Critically, the emotional and psychological distress caused by Virginia Tech's conduct has directly contributed to the worsening of Mr. McElroy's PPMS, causing him physical harm and accelerating the progression of his neurological condition.

## COUNT I: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT OF 1973

42. Mr. McElroy incorporates by reference herein the preceding paragraphs of this Complaint.

43. At all times relevant to the Complaint, Mr. McElroy was a qualified individual with a disability under the Act.

44. At all times relevant to the Complaint, Mr. McElroy could perform the essential functions of his job.

45. Prior to termination, Mr. McElroy was performing his work at a greater than satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

46. Prior to termination, Mr. McElroy revealed his disability and asked for reasonable accommodations.

47. Prior to termination, Mr. McElroy reported that he was being discriminated against on the basis of his disability.

48. Defendant administered a plan in which Mr. McElroy's employment would ultimately be terminated. Mr. McElroy was provided notice that his job had been terminated with his last day worked to be October 13, 2026.

49. Defendant would not have terminated Mr. McElroy or taken the other discriminatory actions against him but for Mr. McElroy's disability and/or his request for

reasonable accommodations and/or his protected activities.

50. As a direct and proximate result of Defendant's actions, Mr. McElroy has suffered and will continue to suffer pecuniary losses.

51. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with malice or reckless indifference to the statutorily protected rights of Mr. McElroy.

52. Defendant has violated Mr. McElroy's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Mr. McElroy's rights.

53. At all times material hereto, Defendant treated Mr. McElroy in a discriminatory manner in comparison with non-disabled employees.

54. At all times material hereto, Defendant treated Mr. McElroy in a discriminatory manner in comparison with similarly-situated employees.

55. At all times material hereto, Defendant intended to terminate Mr. McElroy's employment predicated upon his disability and requests for accommodations.

56. The above-described acts by Defendant and agents of Defendant constitute disability discrimination in violation of the Rehabilitation Act.

## COUNT II: CLAIM FOR RETALIATION IN VIOLATION OF THE REHABILITATION ACT OF 1973

57. Mr. McElroy incorporates by reference herein the preceding paragraphs of this Complaint.

58. At all times relevant to the Complaint, Mr. McElroy was a qualified individual with a disability under the Act.

59. Mr. McElroy engaged in protected acts pursuant to the Act while employed at Defendant, including revealing his disabilities, reporting discrimination, and requesting accommodations. Defendant retaliated against him due to these protected activities.

60. But for Mr. McElroy's engagement in activities protected by the Act, Defendant would not have retaliated against Mr. McElroy.

61. Defendant retaliated against Mr. McElroy by wrongfully terminating his employment.

62. The above-described acts by Defendant and employees of Defendant constitute retaliation in violation of the Rehabilitation Act.

WHEREFORE, Plaintiff Tracy Lee McElroy prays for judgment against Defendant Virginia Tech Board of Visitors | Virginia Polytechnic Institute and State University for equitable relief, back pay, front pay, with pre and post-judgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

Respectfully submitted,

**TRACY LEE MCELROY**

*/s/ Thomas E. Strelka*
Thomas E. Strelka, Esq. (VSB No. 75488)
VIRGINIA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Tel: (540) 283-0802
thomas@vaemployment.law

*Counsel for Plaintiff*